UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLINA FERNANDEZ MARCOS, | No.  2:26-CV-00366-DC-SCR |
| Petitioner, | |
| v. | ORDER AND |
| WARDEN CALIFORNIA CITY DETENTION FACILITY, | FINDINGS & RECOMMENDATIONS |
| Respondent. | |

Petitioner is a federal immigration detainee representing himself in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I.    Factual and Procedural History**

Petitioner, a native and citizen of Nicaragua who is a lawful permanent resident, is currently detained in the California City Immigration Processing Center within this judicial district.  ECF No. 1.  Petitioner has been in DHS custody for more than six months and alleges that he has not been provided a bond hearing before a neutral decisionmaker to determine whether his prolonged detention is justified based on danger or flight risk.  ECF No. 1 at 6.  He indicates that his immigration case has been postponed several times over the course of his detention.  ECF No. 1 at 9.  Petitioner asserts in his sole claim for relief that his ongoing, prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.  ECF No. 1 at

1

17-18.  By way of relief, petitioner requests that the Court order his "release within 30 days" unless respondent schedules a hearing before an immigration judge ("IJ") where the government must establish by clear and convincing evidence that he is a flight risk or a danger to the community.  ECF No. 1 at 20.

In an answer filed on February 24, 2026, respondent indicates that petitioner is mandatorily detained pursuant to 8 U.S.C. § 1226(c)(1) based on four prior aggravated felony convictions.  ECF No. 8 at 1-2; see also ECF No. 8-1 at 3-6 (I-213 Form).  The Department of Homeland Security ("DHS") took him into custody on or about January 9, 2025 after his release from state prison.  ECF No. 8 at 2.  In a Notice to Appear ("NTA"), DHS charged him with being removable pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act based on his felony conviction for committing a forcible lewd act upon a child.[1]  ECF No. 8-2.  On April 1, 2025, DHS determined that petitioner would remain in custody pending a final administrative determination in his removal proceedings.  ECF No. 8-3.  "On November 7, 2025, an immigration judge granted the DHS' motion to "pretermit" Petitioner's I-589, Application for Asylum and for Withholding of Removal.  The immigration judge determined petitioner failed to establish prima face eligibility for relief, and the motion was unopposed" and that an appeal was deemed waived.  ECF No. 8 at 2; ECF No. 8-4 (Order of the IJ).  Petitioner's next immigration court hearing is set for April 1, 2026.[2]  ECF No. 8-5.

Respondent notes that the Supreme Court upheld mandatory detention under § 1226(c) as facially constitutional in Demore v. Kim, 538 U.S. 510, 531 (2003), and reaffirmed that "immigration detention can be constitutional even in the absence of any showing that an individual detainee posed a flight risk or a danger to the community."  Id. at 3.  Respondent

---

[1]  See ECF No. 8-1 at 7-36 (containing the certified records from the Contra Costa County Superior Court indicating that petitioner was charged with and convicted of two counts of committing a forcible lewd act upon a child and two additional counts of committing a lewd act upon a child).  The Court takes judicial notice of these state court records.  See Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (a court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

[2]  EOIR's Automated Case Information database indicates that petitioner's next individual hearing is scheduled for May 4, 2026.  See https://perma.cc/H89M-NFNQ.

further relies on Keo v. Warden of the Mesa Verde ICE Processing Center, 1:24-cv-00919-HBK (HC), 2025 WL 1029392, at *7 (E.D. Cal. Apr. 7, 2025), for the assertion that "[d]ue process doesn't require bond hearings for criminal aliens mandatorily detained under § 1226(c)—even for prolonged periods." Id. at 4.  Finally, respondent contends that whatever test is utilized by the Court, petitioner's detention passes Constitutional muster.  Id. at 5-6.

Petitioner did not submit a reply brief and the time to do so has expired.

## II.    Applicable Detention Statute

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."  Prieto-Romero, 534 F.3d at 1057.  Thus, the undersigned begins by addressing the statutory basis for petitioner's detention.

Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) because there is no evidence in the record that he has a final order of removal.  That provision states that the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses, § 1226(c)(1)(A)-(E), and specifies that the Attorney General "may release" such a noncitizen "*only* if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the noncitizen will not pose a danger or flight risk, § 1226(c)(2).  See Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).  Having found petitioner is subject to mandatory detention under § 1226(c), the undersigned proceeds to analyze his due process claim.

## III.    Due Process Clause Analysis

### A. As-Applied Framework

The petition raises an as-applied, procedural due process challenge to the constitutionality of petitioner's mandatory detention.  Petitioner was initially detained on January 9, 2025 and has been in custody for over 14 months.  He alleges, and respondent does not dispute, that petitioner has never received a bond hearing before an IJ to determine whether his detention is justified based on danger or flight risk.

3

As respondent notes, the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore, 538 U.S. at 531.  The Supreme Court did so with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal."  Id. at 513, 529 n.12, 530.  Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  Demore, 538 U.S. at 532 (Kennedy, J., concurring).  Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."  Preap, 586 U.S. at 420.

While observing that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)," the Ninth Circuit has expressly declined to address "[w]hether due process requires a bond hearing" in such situations.  Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024).  However, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."  Lopez v. Garland, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) (quotation omitted); see also Doe v. Becerra, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024) ("[D]ue process protections do not disappear simply because mandatory detention under Section 1226(c) is at least initially permissible.").  In other words, the Supreme Court's "conclusion [in Demore] that § 1226(c) is constitutional in some of its applications does not mean that the Court 'does not have the power to grant petitions for habeas corpus raising as-applied constitutional challenges to [ ] detention without a bond hearing.'"  Carballo v. Andrews, No. 1:25-cv-0978 KES EPG (HC), 2025 WL 2381464, at *4

4

(E.D. Cal. Aug. 15, 2025) (quoting Perera v. Jennings, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022)) (emphasis in original).

Other Circuit Courts of Appeal have also concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c).  Recently, the Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary."  Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024).  The undersigned finds these authorities persuasive and agrees with petitioner that Demore does not bar an as-applied challenge to his prolonged detention without a hearing to determine whether such detention is justified.  The next step is to determine the appropriate framework in which to analyze petitioner's procedural due process arguments.

**B.  Legal Standard**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

The undersigned has considered the various tests developed by federal courts to evaluate prolonged detention under § 1226(c), and finds that Mathews v. Eldridge, 424 U.S. 319 (1976), provides the appropriate test for due process challenges to prolonged detention.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or

administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### C. Mathews Factors

Private Interest:  An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).  Courts of Appeal have generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged.  See German Santos, 965 F.3d 203, 211 (3d Cir. 2020); Black, 103 F.4th at 150; Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021).  While the Ninth Circuit has not addressed this question, it has previously referred to detention longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."  Rodriguez Diaz, 53 F.4th at 1207 (citations omitted).  Indeed, numerous courts within the Circuit have found due process violations where the length of mandatory detention without bond was much shorter than the fourteen month period of detention at issue here.  See, e.g., Lopez, 631 F. Supp. 3d at 880 (granting request for bond hearing where petitioner was detained under § 1226(c) for one year); Sadeqi v. LaRose, No. 25-cv-2587-RSH-BJW, --- F.Supp.3d ----, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) (noting that "examples abound" of district courts ordering a bond hearing where a petitioner was subject to mandatory detention for about a year and collecting cases).

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention.  See Lopez, 631 F. Supp. 3d at 880–81 (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing).  Here, petitioner's next scheduled immigration hearing has been postponed until May 4. 2026.  Moreover, there is no indication in the record that petitioner is responsible for his own prolonged detention based on any request to continue his removal proceedings.  In fact, when being served with the NTA, petitioner requested a prompt hearing before the Executive Office for Immigration Review as soon as possible and waived his right to prior notice of such hearing.  ECF No. 8-2 at 2.  Accordingly, based on petitioner's 14 month detention to date without a bond hearing and the continuance of his next removal hearing, the undersigned finds petitioner's detention is sufficiently "prolonged" and confers a substantial

6

private interest under the Mathews standard. In sum, the undersigned concludes that the first Mathews factor weighs heavily in petitioner's favor.

Risk of Erroneous Deprivation: The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor firmly favors petitioner for several reasons. First, it is undisputed that petitioner has not received a bonding hearing at any point before a neutral decision maker. It is important to point out that respondent does not argue that the custody determination made by a DHS official on April 1, 2025 satisfies the constitutional requirements for a hearing before a neutral decision maker. Indeed, the outcome of that custody determination was a foregone conclusion given that §1226(c) mandates detention, absent exceptions not present in this case. "In the absence of any meaningful initial procedural safeguards, it appears to us that almost *any* additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)).

Second, in evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory or regulatory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention. See Rodriguez Diaz, 53 F.4th at 1209-10 (finding risk of erroneous deprivation low where the petitioner "was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker"). As petitioner notes here, he has "no statutory or regulatory pathway . . . to seek a bond hearing before a neutral decisionmaker." ECF No. 1 at 5, ¶ 21. "[T]he almost nonexistent procedural protections in place for section 1226(c) detainees markedly increased the risk of an erroneous deprivation of Petitioners' private liberty interests." Black, 103 F.4th at 152. In the context of the second Mathews factor, courts have held that "congressional rationale for the procedures available pursuant to [§ 1226(c)] does not override petitioner's constitutional right to due process." Jensen

7

v. Garland, No. 5:21-cv-1195 CAS AFM, 2023 WL 3246522, at *7 (C.D. Cal. May 3, 2023). Accordingly, the second Mathews factor also weighs toward petitioner.

Government Interest:  Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail."  Mathews, 424 U.S. at 335.  Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'"  Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515).  Higher courts have also recognized that the detention of noncitizens during removal proceedings can also serve the legitimate government purpose of preventing flight.  Prieto-Romero, 534 F.3d at 1065 (citing Demore, 538 U.S. at 528).  Thus, in some general way, the government has an interest in the detention of people held under § 1226(c).

Respondent argues that these interests "do not abate over time," and that detention of criminal noncitizens pending removal proceedings remains constitutional where it continues to serve its immigration purposes of protecting the community and preventing flight.  ECF No. 8 at 4.  "[T]he additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests.  At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees."  Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal.  After all, the purpose of a bond hearing is to inquire whether the [noncitizen] represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)).  In petitioner's case, the government's interest in further detaining him without a hearing to determine whether such detention is justified is minimal.

Administrative burden is a legally cognizable interest under Mathews.  But respondent's interest is further diminished by the low fiscal and administrative burdens associated with a bond hearing.  See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

8

Accordingly, the undersigned finds the final factor tilts toward petitioner.  Having found all three factors favor petitioner, the undersigned will determine the appropriate habeas relief.

### D.  Remedy

For reasons explained above in the Mathews analysis, the undersigned finds that petitioner is entitled to a bond hearing before an IJ where the government is required to prove by clear and convincing evidence that he is a risk of flight or danger.  "Other district courts in the Ninth Circuit that have found prolonged mandatory immigration detention unconstitutional absent a bond hearing have applied the clear and convincing evidence standard, with the government bearing the burden of proof."  Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases).  The undersigned agrees this is the appropriate burden given the liberty interests at stake and recommends that petitioner receive a bond hearing before a neutral adjudicator at which the government bears the burden of showing by clear and convincing evidence that he is either a flight risk or a threat to safety to justify his continued detention.  See Black, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing . . .by clear and convincing evidence.").

Accordingly, IT IS HEREBY ORDERED that:

1.  Petitioner's motion to proceed in forma pauperis (ECF No. 2) is granted.

2.  Petitioner's motion to appoint counsel (ECF No. 3) is denied as unnecessary.

IT IS FURTHER RECOMMENDED that:

1.  Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondent be ordered to provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of issuance of this order.

3.  Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4.  If petitioner is granted release on bond, respondent shall return all of petitioner's

9

documents and possessions at the time of release.

5. Judgement be entered in petitioner's favor and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 17, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

10